**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J & J Sports Productions, Inc., | |
| Plaintiff, | No. CV-13-01897-PHX-PGR |
| vs. | ORDER |
| Sarahi Ahumada, individually and d/b/a Estilo Sinaloa a/ka Restaurant Autentico La Ensenadita, | |
| Defendant. | |

Pending before the Court is plaintiff J & J Sports Productions, Inc.'s Application for Default Judgment by the Court (Doc. 14), wherein the plaintiff seeks the entry of default judgment against defendant Sarahi Ahumada, individually and d/b/a Estilo Sinaloa a/k/a Restaurant Autentico La Ensenadita. Having reviewed the record, the Court finds that the default judgment application should be granted pursuant to Fed.R.Civ.P. 55(b)(2) to the extent that the Court will award the plaintiff the sum of $ 2,600.00 in total damages, as well as its recoverable costs and reasonable attorney's fees.[1]

---

[1] The Court finds that an evidentiary hearing pursuant to Fed.R.Civ.P. 55(b)(2) is not necessary for the purpose of determining the amount of damages to

Background

The complaint alleges that defendant Ahumada showed the pay-per-view program, the "Julio Cesar Chavez, Jr. v. Sergio Martinez, WBC Middleweight Championship Fight Program" (the "program"), on September 15, 2012, at her restaurant located at 3108 W. McDowell Road, Phoeniz, Arizona 85009, without having purchased a commercial license to do so from the plaintiff, which held the exclusive nationwide commercial distribution (closed-circuit) rights to the program. The complaint alleges three claims: violation of 47 U.S.C. § 605 (Count I); violation of 47 U.S.C. § 553 (Count II); and conversion (Count III). The record establishes that defendant Ahumada was served on January 3, 2014 through service at a private residence on Yolanda Luna, who is alleged in the declaration of service to be the defendant's "Daughter/Co-Occupant."[2] The defendant never responded to the complaint, and the Clerk of the Court entered default against the defendant on January 28, 2014 (Doc. 12). The plaintiff filed its pending default judgment application on March 21, 2014, and served the application on the defendant.

Discussion

The Court concludes that the entry of default judgment is appropriate under the factors set forth in Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.1986).

---

which the plaintiff is entitled as all of the damages the Court is willing to impose are ascertainable from the record before it.

[2] Although the declaration of service (Doc. 10) does not so state, the Court presumes that the service was pursuant to Fed.R.Civ.P. 4(e)(2)(B) ("leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there".) The Court notes that the declaration of service does not specify any age for the defendant's daughter so the Court does not know for sure whether the daughter was a person of "suitable age and discretion." The Court will, however, accept that service was properly made because the defendant has chosen not to challenge the validity of service.

1    Although the complaint alleges federal claims pursuant to 47 U.S.C. § 553 and § 605, the plaintiff's default judgment application only seeks liability and damages under § 605, which prohibits the unauthorized interception and distribution of communications. The complaint alleges in part in Count I, the § 605 claim, that the defendant "did unlawfully intercept, receive, publish, divulge, and/or exhibit the Program at the time of its transmission" at the defendant's commercial establishment, and that she did so "willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain." The general rule of law is that upon default all well-pleaded factual allegations of the complaint regarding liability, but not those relating to damages, are taken as true. DIRECTV, Inc. v. Huynh, 503 F.3d 847, 851 (9th Cir.2007); Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir.1977). The Court concludes that the plaintiff's allegations regarding § 605 liability, taken as true based on the entry of default, are sufficient to entitle the plaintiff to an award of damages.

Section 605 provides for statutory damages per violation "of not less than $1,000 or more than $10,000, as the court considers just." § 605(e)(3)(C)(i)(II). Section 605 further permits an additional award of enhanced damages of up to $100,000 if "the court in its discretion" determines that the defendant willfully violated the statute "for purposes of direct or indirect commercial advantage or financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The plaintiff seeks the maximum award under both subsections, for a total federal statutory damages award of $110,000.00.

Having reviewed the record, the Court concludes that the § 605 damages sought by the plaintiff are grossly disproportionate given the minimal evidence submitted by the plaintiff, which consists in the main part of the problematic form affidavit of its auditor Margaret Hendricks. *See* Kingvision Pay-Per-View, Ltd. v.

Backman, 102 F.Supp.2d 1196, 1198-99 (N.D.Cal.2000) (In declining to award any enhanced damages under § 605 and only the minimum $1,000 in statutory damages, the Court noted that "the principle of proportionality governs here: distributors should not be overcompensated and statutory awards should be proportional to the violation.") *See also,* Joe Hand Promotions, Inc. v. Streshly, 655 F.Supp.2d 1136, 1139 (S.D.Cal.2009) (In denying the plaintiff's default judgment motion because the $100,000 in § 605 and § 553 damages requested by the plaintiff was "manifestly excessive," the court stated that it would not "indulge Plaintiff's attempt to obtain the biggest judgment it can by filing cookie-cutter pleadings that trivialize the particular facts of this case and ignore the voluminous case law that reveals its requested judgment to be so wildly out of the question.")

As an initial matter, the Court is concerned about some inconsistencies in Ms. Hendricks' affidavit.  First, in two places in Ms. Hendricks' affidavit she identifies the restaurant she visited on the night of the program as Estilo Sinaloa, which the complaint alleges to be the name of the defendant's restaurant, but in another part of the same affidavit she identifies the restaurant as "Tacos Mariscos Sinaloa," which is apparently a different restaurant that is located several blocks from where the defendant's restaurant was located on the night the program was televised. Second, Ms. Hendricks states that the street address of the defendant's restaurant is 3102 W. McDowell, whereas the complaint alleges that the street address is 3108 W. McDowell.  While the Court accepts based on the totality of the evidence presented in Ms. Hendricks' affidavit that the affidavit is actually directed at the defendant's restaurant, the Court finds it to be inexplicable that the plaintiff's counsel submitted the affidavit without noting, much less explaining, the above inconsistencies.

As to the facts relevant to the issue of § 605 damages, Ms. Hendricks states in her affidavit that she visited the defendant's restaurant at approximately 9:30 p.m.

on September 15, 2012; she does not provide any information as to how long she stayed at the restaurant. She states that during her visit the restaurant was showing the 12th round of the Chavez-Martinez fight, that Chavez was wearing red trunks and that Martinez was wearing black and maroon trunks, and that during her visit it was announced on the telecast that Martinez had won the fight. She states that the fight was being shown on a single television set, but she says nothing about the size of that television other than that it was not a big screen set; she also does not state where the television was located within the restaurant, nor does she provide any information concerning the extent to which the television was visible to the restaurant's patrons. She also states that she took a single head count during her visit and that there were approximately 100 people in the restaurant and that the restaurant had approximately 20 tables.[3] She further states that the restaurant did not advertise or promote the fight telecast in any way and that there was no cover charge. She does not state that she ordered any food or drinks during her stay.

Although the plaintiff has asked for the maximum possible § 605 damages, its memorandum is of limited helpfulness as it is essentially a boilerplate one with very limited discussion of the relevant facts of this case. *See* J & J Sports Productions, Inc. v. Montano, 2013 WL 1680663, at *4 (E.D.Cal. April 17, 2013) ("Determining whether Defendant's actions were willful or egregious is hampered because Plaintiff

---

[3] The Court notes that it accepts Ms. Hendricks' statement that there were approximately 100 people in the restaurant with some reservation because the term "approximately" is vague, Ms. Hendricks only took one head count, and if there were 100 people in the restaurant but only 20 tables then the restaurant must have been essentially completely filled but Ms. Hendricks does make that observation as one would expect given the purpose of her visit. In any case, the plaintiff has not submitted any evidence that the number of patrons was in fact attributable to the defendant's showing of the telecast.

filed a brief with minimal analysis of the facts specific to this case. Federal courts have noted similar briefs from Plaintiff with minimal factual analysis.") As the plaintiff correctly states, the Court has considerable discretion in awarding § 605 damages. Based on the minimal evidence presented, the Court concludes that statutory damages pursuant to § 605(e)(3)(C)(i)(II) in the statutory minimum amount of $1,000 is a just award.

While the plaintiff requests that the Court also award it significant enhanced damages to deter the piracy of its closed-circuit telecasts, the Court declines to do so under the facts of this case. In light of the supporting affidavit of Joseph M. Gagliardi, the plaintiff's president, the Court accepts that the defendant must have taken specific wrongful actions in order to intercept the plaintiff's encrypted program. But a discretionary award of enhanced damages under § 605(e)(3)(C)(ii), which are analogous to punitive damages, is not mandated notwithstanding the defendant's willfulness. Here, there is little, if any, evidence in the record of any significant "commercial advantage or private financial gain" or of egregious misconduct by the defendant warranting enhanced damages inasmuch as the evidence is that the defendant's restaurant had only one television set, which was not even a big screen set, and that the defendant did not advertise the telecast or had a cover charge, and there is no evidence that the defendant has been found to have previously violated § 605 or § 553.[4]  See Kingvision Pay-Per-View, Ltd. v. Guzman, 2008 WL 1924988,

---

[4]

While Mr. Gagliardi states in his affidavit that "Defendant's patrons purchased food and/or drinks while viewing the Program," there is no admissible evidence of that in the record as Mr. Gagliardi was not present at the defendant's restaurant during the telecast and Ms. Hendricks' affidavit does not state that she witnessed any such purchases or made any herself. Mr. Gagliardi also states that the defendant's pirating of the telecast has resulted in the plaintiff losing customers and having its goodwill and reputation damaged, but there is no evidence quantifying

at *3 (D.Ariz. April 30, 2008) ("Courts use a variety of factors in determining whether a defendant's conduct is subject to enhanced damages for willfulness under § 605, including prior infringements, substantial unlawful monetary gains, significant actual damages to the plaintiff, the defendant's advertising of the broadcast, and the defendant's charging a cover charge or premiums for food and drinks during the broadcast.") *See also*, Kingvision Pay-Per-View, Ltd. v. Backman, 102 F.Supp.2d at 1198 n.2 (Court stated that "[a]n establishment that does not promote itself by advertising the program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by [§ 605]'s framers.")  While deterring the plaintiff from future similar misconduct may also be a reason to award enhanced damages, the plaintiff has not presented any evidence that the plaintiff's restaurant is still in business.

The plaintiff also requests an award of $1,600.00 in damages under Count III, its conversion claim, which is presumably brought pursuant to Arizona common law although the complaint does not so state.  Assuming without deciding in this default judgment context that the wrongful interception of television broadcasts can constitute conversion under Arizona law and that the awarding of conversion damages does not constitute duplicative damages in light of the award of statutory damages, the Court will grant the request for conversion damages.  The amount requested is appropriate because the plaintiff has presented evidence through the affidavit of Joseph Gagliardi that the plaintiff had the sole distribution rights to the program and thus the right of possession at the program at the time the defendant illegally showed the telecast at her restaurant, and that the plaintiff would have charged the defendant $1,600.00 if she had purchased the required commercial

---

any such losses.

license to show the program in her restaurant.

The plaintiff also requests in its complaint and in its default judgment application that it be awarded its reasonable attorney's fees and relevant costs pursuant to § 605.  Section 605(e)(3)(B)(iii) provides that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  So that it will have some basis on which to determine the reasonableness of any requested fee request, the Court will require the plaintiff to submit an itemized list of attorney's fees, wherein it (1) details the actual time expended by task (taking into account the use by the plaintiff's counsel of any boilerplate pleading and motion-related forms he uses in this type of action), the hourly rate charged, and the identities and experience of the people for which reimbursement is requested, and (2) details its costs.  Therefore,

IT IS ORDERED that plaintiff's J & J Sports Productions, Inc.'s Application for Default Judgment by the Court (Doc. 14) is granted pursuant to Fed.R.Civ.P. 55(b)(2) to the extent that the plaintiff is awarded the sum of $2,600.00 from defendant Sarahi Ahumada.  The Clerk of the Court shall enter judgment for the plaintiff accordingly.

IT IS FURTHER ORDERED that the plaintiff shall file its request for attorney's fees and costs no later than May 23, 2014.

DATED this 5th day of May, 2014.

Paul G. Rosenblatt
United States District Judge

- 8 -